IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELIZABETH'S STUDIO LLC,

    Plaintiff,

       v.

SCHEDULE A DEFENDANTS,

    Defendants.

Civil Action No. 26-cv-1259

(Judge Wiegand)

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR
A PRELIMINARY INJUNCTION**

## I.  <u>INTRODUCTION</u>

The Responding Defendants[1] operate e-commerce stores based in the People's Republic of China ("PRC") that offer to sell, sell, and ship apparel into the United States made using fabric that infringes the copyrighted designs of Plaintiff Elizabeth's Studio LLC ("Elizabeth's Studio"). Responding Defendants registered their domains through privacy-protection services used to mask the actual registrant data in the public WHOIS record. No Responding Defendant's public-facing website disclosed any corporate identity or physical address. Having concealed their whereabouts, Responding Defendants now demand this Court reward that concealment by denying Plaintiffs' request for a preliminary injunction, in part, based on a failure to serve Responding Defendants in the traditional manner used to serve businesses operating openly.

Responding Defendants' asserted grounds for opposing the preliminary injunction lack merit. In addition to the admissions made by Responding Defendants in their opposition, the allegations in the Complaint establish a *prima facie* case of personal jurisdiction over each of the

---

[1] The "Responding Defendants" opposing the preliminary injunction are Defendant No. 49 (cowgirlshouse.com), No. 50 (texasqualitywear.com), No. 67 (usarodeotime.com), No. 71 (dailycloths.com), No. 76 (everydaly.com), No. 87 (mywesternshop.com), No. 88 (texaslocalshop.com), No. 90 (usafaithwear.com), No. 91 (gamedayootd.com), No. 92 (shamrocktshirt.com), and No. 95 (cowgirlelf.com) (collectively the "Responding Defendants").

Responding Defendants. Plaintiff remains likely to prevail on the merits of its copyright claim. No Responding Defendant asserts that it does not infringe Plaintiff's copyrights. The asset restraint sought is also appropriate and is not a proper reason for denying Plaintiff a preliminary injunction.

## II.   RELEVANT FACTUAL BACKGROUND

This Court has already found, on this record, that a preliminary injunction is warranted: Plaintiff "is likely to prevail on her copyright claims at trial," the Responding Defendants acted "in a willful attempt to pass off their knock-off products as genuine," and their infringing sales reached "within this district and throughout the United States." (ECF No. 33 ¶ 4.) The Responding Defendants were carved out of that order only because they appeared; their restraint was continued by agreement pending this hearing. (ECF No. 34.) Their opposition (ECF No. 24) never touches that merits finding. It does not deny that they reproduced and sold products bearing Plaintiff's copyrighted designs. It raises only service and personal jurisdiction, and neither is a reason to withhold the injunction. The injunction rests on notice, which the Responding Defendants concede. Their motion to quash service (ECF No. 45) is no answer to it and is, in any event, premature: no service has issued in this case, so there is nothing yet to quash. Because the injunction rests on actual notice, which the Responding Defendants concede, a likelihood-of-success finding they do not contest, and personal jurisdiction their own declarations establish, a preliminary injunction should issue against the Responding Defendants and the asset restraint maintained.

## III.   ARGUMENT

**A. The Injunction Rests on Actual Notice, Which the Responding Defendants Concede; Any Service Objection Is Premature Given that Service Has Not Yet Been Executed and Is, In Any Event, Remedied By Completion of Service, Not Denial of the Injunction.**

A preliminary injunction may issue "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The Rule requires *notice*, not completed formal service. As the Supreme Court has

explained, Rule 65(a)'s notice requirement is satisfied by actual notice and an opportunity to be heard, distinct from service of the summons and complaint. *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local No. 70*, 415 U.S. 423, 434 n.7 (1974); *accord Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997); *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978) (Rule 65(a) "does not require service of process"). An injunction binds those with "actual notice of it." Fed. R. Civ. P. 65(d)(2). Courts in this District apply that principle to unserved Chinese online sellers in Schedule A cases, entering and maintaining preliminary relief on the basis of notice. *Airigan Sols., LLC v. Rainbow Island Store*, 2023 WL 9067557 (W.D. Pa. July 28, 2023); *McNatt v. LiManJun8868*, 2025 WL 2917966 (W.D. Pa. June 27, 2025).

The Responding Defendants, though not formally served, concede that notice. They received Plaintiff's email notice at the addresses through which they transact. *See Declaration of Stanley D. Ference III* at ¶ 8 (submitted herewith). That is all Rule 65(a)(1) requires. Their objection to service changes nothing and is, in any event, premature. Service has not issued; no summons has been served, and the Court has not yet authorized electronic service, so there is no completed act of service for a Rule 12(b)(5) motion to test. Nor is any deadline in play: Rule 4(m)'s time limit does not apply to service in a foreign country, so Plaintiff has missed nothing and remains free to complete service. And even a meritorious service objection would not defeat the injunction, because the remedy for insufficient service is leave to perfect it, not dissolution of relief that rests independently on the notice the Responding Defendants concede. *See Umbenhauer v. Woog*, 969 F.2d 25, 30–31 (3d Cir. 1992); Fed. R. Civ. P. 4(f), (m).

**B. The Court Has Personal Jurisdiction Over Responding Defendants; Alleged "Zero Sales" Goes to Damages, Not Contacts.**

On a motion decided without an evidentiary hearing, like the present one, Plaintiff need only make a *prima facie* showing of jurisdiction; the Complaint's jurisdictional allegations are

accepted as true, and all disputed facts are construed in Plaintiff's favor. *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316–17 (3d Cir. 2007). The Third Circuit recently vacated a dismissal because the district court failed to credit allegations that foreign online sellers offered infringing products for purchase and delivery to Pennsylvania residents. *Wood v. Eiazuiks* , No. 25-2340, 2026 WL 1397312, at *3 (3d Cir. May 19, 2026) (non-precedential); *accord Hasson v. FullStory, Inc.,* 114 F.4th 181, 193 (3d Cir. 2024). As the Third Circuit summarized, the allegations in the complaint in *Wood* included "Defendants offered and continue to offer the infringing products for purchase by and delivery to Pennsylvania residents through online merchants." *Id.*

In the present case, Plaintiff alleges that "each Defendant has sold additional products bearing Plaintiff's copyrighted designs to consumers within Pennsylvania not affiliated in any way with Plaintiff through the regular course of business." (*Complaint*, ECF No. 1 at ¶ 3.)  Plaintiff also alleges that "Defendants have committed the intentional tort of copyright infringement in Pennsylvania by displaying Plaintiff's Works in Pennsylvania … shipped infringing products into Pennsylvania, and collected Pennsylvania sales tax on such orders." (*Id.* at ¶ 8.)  These allegations, like the allegations in *Wood*, are sufficient to establish a *prima facie* showing of jurisdiction. At this pre-discovery stage, Plaintiff's allegations are already borne out by the Responding Defendants' own admissions of Pennsylvania sales. Only three of the eleven Responding Defendants, Shenzhen Huipeng (shamrocktshirt.com), Shenzhen Jinbaitao (cowgirlshouse.com), and Wuhan Donghaozhan (usarodeotime.com), claim to lack Pennsylvania contacts.

The other Responding Defendants' own declarations concede Pennsylvania sales through storefronts they admit operating (e.g., Dongguan Hanweixiao $1,434.37; Guangzhou Shanmeng $2,036.68; Wuhan Daleduo $926.19; Guangzhou Youwu $627.01). (ECF No. 24 § III). Those are interactive storefronts that accept orders from and ship accused goods to Pennsylvania consumers

— the paradigm of purposeful availment. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452, 454 (3d Cir. 2003); *see* ECF No. 33 ¶ 4 (infringement "within this district"). The three who swear zero Pennsylvania sales nonetheless run materially identical storefronts that price in U.S. dollars, elect "the laws of the United States," ship "from the US," and consent in their own DMCA policies to federal-court jurisdiction. Ference Decl. ¶¶ 6–7. And their sworn figures are not credible: their tables understate the balances actually restrained in their PayPal accounts by roughly 3.6 to 51 times, *e.g.*, Jinbaitao swore $4,671.68 frozen against $236,864.81 held. Ference Decl. ¶ 4. A sworn summary contradicted by other record evidence cannot carry a defendant's burden, *Antsy Labs, LLC v. Individuals*, No. 21 C 3289, 2022 WL 17176498, at *5 (N.D. Ill. Nov. 23, 2022), and courts have refused to credit similar zero-sales claims where the sellers' own stores belied them. *POM Group, Inc. v. Schedule A Defendants*, 2026 WL 1027266, at *8 (W.D. Pa. Apr. 16, 2026).

Plaintiff's Complaint also asserts a civil conspiracy claim. As discussed above, certain of the Responding Defendants concede sales into Pennsylvania. Under conspiracy law, these contacts are imputed to all members of the conspiracy. *See Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 15, 16-17 (E.D. Pa. 1985). Thus, accepting Responding Defendants' representation that all but three of the Responding Defendants have sales of infringing products into Pennsylvania, this Court has personal jurisdiction over all of the Responding Defendants based upon those admitted sales into Pennsylvania.

Independently, the Court also has jurisdiction under Rule 4(k)(2), the federal long-arm provision reaching a foreign defendant not subject to jurisdiction in any single State. *See* POM Grp., 2026 WL 1027266, at *5 (W.D. Pa. Apr. 16, 2026) (exercising jurisdiction over Chinese online sellers under Rule 4(k)(2) applying the Fifth Amendment standard of *Fuld v. Palestine Liberation Organization,* 606 U.S. 1 (2025)); *Xie v. GUANHE Home Essentials, Inc.,* 2025 WL

5

1039233, at *5–6 (W.D. Pa. Apr. 8, 2025) (finding jurisdiction under Rule 4(k)(2) over foreign sellers who had made no U.S. sales at all, because their stores directly targeted the U.S.). The Responding Defendants, who identify no State in which they could instead be sued, are subject to jurisdiction on the same basis. At a minimum, Plaintiff's well-pleaded allegations and the conflicts the Responding Defendants themselves introduced entitle Plaintiff to limited jurisdictional discovery before any dismissal. *Toys "R" Us, Inc.,* 318 F.3d at 455-58; *Malik v. Cabot Oil & Gas Corp.,* 710 F. App'x 561, 565 (3d Cir. 2017); *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 336 (3d Cir. 2009) (discovery particularly appropriate where the defendant is a corporation that alone holds the records). Ultimately, should the Court find any Responding Defendant beyond its reach, the remedy is transfer, not dismissal. 28 U.S.C. §§ 1404(a), 1406(a), 1631.

**C. The Injunction's Core Finding — Likelihood of Success — Is Unrebutted.**

The Responding Defendants do not deny that they sold products bearing Plaintiff's copyrighted designs. They argue only that the registrations lost the 17 U.S.C. § 410(c) presumption and that originality is unproven. But loss of the presumption is not invalidity; it goes only to the weight the Court gives the certificate, *Don Post Studios, Inc. v. Cinema Secrets, Inc.*, 124 F. Supp. 2d 311, 315 (E.D. Pa. 2000), and the Responding Defendants offer no evidence that any design is unoriginal or copied. Originality requires only "some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Plaintiff's authorship of each of the eight registered works and the certificates themselves (Compl. Ex. 1) suffice to show likely success.

To the extent that courts have issues with so-called "late registration," it is because there is no evidence tying the copyright claimant to the work, not with respect to copyrightable subject matter (*i.e.*, originality). While Opposing Defendants cite to M. Nimmer & D. Nimmer, Nimmer on Copyright, §12.11[A][1](b) (Opposition at 8), the citation is taken out of context as it refers to

6

a hypothetical situation where a copyright claimant obtained a copyright registration for a work that was published in 1935 and there was no evidence other than the registration certificate that the copyright claimant owned the work. The same section of *Nimmer* cited by Opposing Defendants also states that "[m]ore generally, to the extent that plaintiff tenders sufficient evidence of ownership, courts may extend the presumption." Here, the *Declaration of Elizabeth Shnayder* (ECF No. 11–2) ties the Plaintiff to ownership of the copyrighted works. For example, the *Shnayder Declaration* states Plaintiff is engaged in the creation of the Plaintiff's Works (*Id.* at ¶ 4), which are defined as the copyrighted works involved in this litigation (*Id.* at ¶ 5). With respect to lack of defense evidence, as in the present case, *Nimmer* cites to *Lego A/S b. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 585, 595-96 (D. Conn. 2019), where the court held "that these [copyright] registrations give rise to a rebuttable presumption that Lego owns valid copyrights in the Lego minifigures" because the defendant "has not offered any evidence tending to show that the certificates of registration provided by Lego are invalid or otherwise unreliable, nor does it proffer evidence challenging Lego's ownership of the copyrights … covered in those registrations." Accordingly, in this case, the Court should likewise hold that there is a presumption of validity.

The remaining injunction factors — irreparable harm, the balance of equities, and the public interest — are uncontested and were found on this record. (ECF No. 33 ¶¶ 4–6, 8–9).

### D. The Asset Restraint Should Continue; The Asset Restraint is Not a Basis for Denying the Injunction.

The Responding Defendants do not dispute that a prejudgment restraint may preserve Plaintiff's equitable recovery of the infringer's profits, 17 U.S.C. § 504(b); they argue only that the restraint exceeds the sales "associated with the allegedly infringing products." But it is their burden to show "that the universe of potential [infringing] profits is less than what is currently

frozen," *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-cv-3471, 2020 WL 8260381, at *5 (N.D. Ill. July 20, 2020), and a sworn summary contradicted by the record cannot carry it, *Antsy Labs*, 2022 WL 17176498, at *5. The Responding Defendants' one-page tables are contradicted by their own PayPal records, which they understate by 3.6 to 51 times. Ference Decl. ¶ 4. The movants' own W.D. Pa. authority is against them: *Xie* holds a court "may freeze funds arising from the sale of the allegedly infringing products," and declined only as to a defendant that made no sales, the opposite of these actively selling storefronts. 2025 WL 1039233, at *11; Ference Decl. ¶ 6. This Court has also exercised authority under Pennsylvania law and Rule 64 to restrain Schedule A infringers' proceeds. *Tang v. Longyan Blue Whale Info. Tech. Co.*, 2026 WL 73759 (W.D. Pa. Jan. 9, 2026); *Airigan*, 2023 WL 9067557; *McNatt*, 2025 WL 2917966. Here, each restrained balance is a fraction of the Responding Defendants' exposure for willful infringement, which is up to $150,000 per work, 17 U.S.C. § 504(c). Plaintiff is willing to agree to narrow the restraints to each account's U.S.-dollar balances, releasing any foreign-currency balances. Ference Decl. ¶ 5; *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329, 333 (1999). If the Court credits any Responding Defendant's showing, the remedy is tailored discovery into the full universe of Defendants' infringing sales, or a meet-and-confer path, not to deny the injunction. *Xie*, 2025 WL 1039233, at *11; *POM Group*, 2026 WL 1027266, at *8.

### 1. Plaintiff's Potential Recoverable Damages, Not the Responding Defendants' Infringing Sales, Are the Proper Measure of the Asset Restraint.

The proper measure of an asset restraint is the plaintiff's potential recovery in the action. As the Third Circuit instructed in *Hoxworth v. Blinder, Robinson & Co.*, "some attempt to *tailor the scope of the injunction to the likely size of the judgment* is necessary," though the precision of that tailoring "lies within the equitable discretion of the district court." 903 F.2d 186, 199 (3d Cir. 1990) (emphasis added). Responding Defendants' Opposition is premised on the alleged proceeds

from sales of infringing products. Disgorgement of those profits is one measure of damages, but it is not the only one. The Copyright Act allows a prevailing plaintiff to recover either: (1) actual damages plus any additional profits of the infringer, or (2) statutory damages. *See* 17 U.S.C. § 504. The infringer's profits, thus, do not cap a copyright owner's recovery.

Up to $150,000 per infringed work per defendant in statutory copyright damages may be awarded. 17 U.S.C. § 504(c)(2). Statutory damages are a recognition that proving actual damages can be difficult, as actual damages include reputational harm and lost profits of the copyright owner. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232–33 (1952) (statutory damages are appropriate because of the difficulty of proving damages or lost profits); *Adlife Mktg. & Commc'ns Co. v. Ad Post Graphics Media Mktg., Inc.*, 708 F. Supp. 3d 567, 578 (M.D. Pa. 2023) (defendants' default "prevented [plaintiff] from identifying the amount of profits related to the infringing uses" and warranted statutory damages); *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889, 892 (W.D. Pa. 1985) (statutory damages should exceed unpaid license fees "so that defendant will be put on notice that it costs less to obey the copyright laws than to violate them"); *Disney Enters., Inc. v. Farmer*, 427 F. Supp. 2d 807, 816–17 (E.D. Tenn. 2006) (statutory damages are especially appropriate where "the information needed to establish an exact measure of actual damages is within the infringers' control and often is not fully disclosed").

Copyright infringement occurs whenever one of the exclusive rights of a copyright owner is violated. 17 U.S.C. § 501. Those rights include the right to reproduce the copyrighted work, the right to prepare derivative works based on the copyrighted work, and the right to display the copyrighted work publicly. 17 U.S.C. §§ 106(1), (2), and (5). None of these rights requires a sale to be made. Each Responding Defendant has committed all three violations. Statutory damages of

up to $150,000 are therefore available against each of the Responding Defendants – including those who report no or limited sales.

Each Responding Defendant is potentially liable for up to $150,000 per work infringed, and because the Copyright Act awards statutory damages on a per-work, per-defendant basis, most Responding Defendants face multiples of that figure for displays of multiple infringing images. The restraint thus falls well within the likely size of judgment *Hoxworth* makes the proper measure.

## 2. Frozen Assets Do Not Need to Be Tied to the Illegal Conduct.

Responding Defendants rely on the Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), and the cases applying it. (*See* ECF No. 24 at 10–11). However, there are two flaws with this reliance.

First, *Grupo* limits the use of Fed. R. Civ. P. 65 to freeze assets when the complaint only seeks money damages. *Grupo* itself framed its holding by the very limitations that Plaintiff falls outside of: it addressed only "an action for money damages" in which "no lien or equitable interest is claimed" in the assets to be restrained. *Grupo*, 527 U.S. at 310. Here, Plaintiff seeks an injunction against continued infringement as well as damages, rendering *Grupo* inapplicable.

Further, the asset freeze that the Court entered is not only authorized by Fed. R. Civ. P. 65; it is also authorized by Rule 64. Although *Grupo* limited the use of Rule 65 to freeze assets when the complaint seeks only money damages, no such limitation exists for the Court's use of Rule 64. Indeed, *Grupo* itself preserved Rule 64: the Court declined to extend Rule 65's equitable reach in part because doing so "could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance." *Grupo*, 527 U.S. at 330–31.

Rule 64 authorizes federal courts to apply state-law remedies for seizing property. Pennsylvania law provides such a remedy. For example, in *Walter v. Stacy*, 837 A.2d 1205, 1207–

10

10 (Pa. Super. Ct. 2003), the trial court had entered an injunction restraining dissipation of assets from the sale of the defendants' home in a wrongful death suit to ensure the availability of those unrelated assets to satisfy a potential wrongful death judgment. The Superior Court held that the trial court had the power to freeze those unrelated assets to prevent the "unfair, wholesale dissolution of their assets in anticipation of civil liability." *Id.; see also Ambrogi v. Reber*, 932 A.2d 969, 975 (Pa. Super. Ct. 2007), *appeal denied*, 952 A.2d 673 (Pa. 2008) (approving the freezing of the defendant's real estate holdings unrelated to the claim). Thus, frozen assets need not be tied to the infringing conduct, and the Court should not narrow the asset restraint.

### 3. The Transient, Identity-Shifting Nature of the Responding Defendants' Operations Warrants a Continuing Freeze of All Available Assets.

The continued restraint of any available assets up to $150,000 is necessary to preserve any hope Plaintiff has of satisfying any judgment entered against the defendants because they are foreign entities operating under shifting or inaccurate identities with no other assets within this Court's jurisdiction. *Ference Decl*. at ¶ 9. The prospect of defendants like these disappearing with their assets is not just speculation; in another Schedule A action handled by Plaintiff's counsel, a defendant explicitly told the plaintiff that if a low settlement offer was not accepted, the defendant would walk away from its account and simply open a new account. *Id.* at ¶ 10.

Schedule A Defendants often operate tens or hundreds of online storefronts under different identities and frequently choose to abandon any identity caught infringing U.S. intellectual property rights, and withdraw the assets remaining in their accounts the moment a freeze is lifted. *See Ference Decl*. at ¶ 11; *Volkswagen AG v. hkseller\*2011*, No. 18-cv-7621 (N.D. Ill. Nov. 13, 2018) (ECF Nos. 18, 19) (describing this behavior). Moreover, in the vast majority of Schedule A cases, the defendants have no defense to the plaintiff's infringement claims and typically do not even bother to mount any defense. *Ference Decl*. at ¶ 12. In fact, their business model seems to be

to infringe at will until caught, and then to abandon the identity and storefront that is caught and to resume infringing under a different identity through a different storefront. *Id.* at ¶ 12.

Given the deceitful and secretive nature of online infringement, federal circuit courts have repeatedly held that pseudonymous foreign defendants operating Schedule A storefronts are highly likely to transfer or dissipate assets the moment they learn of an enforcement action. *See Hoxworth*, 903 F.2d at 194–95 (recognizing that asset restraints are appropriate where the record shows defendants are likely to evade judgment by secreting assets); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132–33 (2d Cir. 2014); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1526 (S.D. Cal. 1990) (finding "a likelihood that defendants would transfer and hide assets in order to avoid a judgment"), *aff'd*, 970 F.2d 552, 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987–88 (11th Cir. 1995); *In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979).

Accordingly, freezing all of the available assets in the Responding Defendants' online accounts is the only way to provide any potential relief to Plaintiff and the only meaningful disincentive to these Responding Defendants' blatant and willful infringement.

## IV.   CONCLUSION

For these reasons, the Court should enter a preliminary injunction against the Responding Defendants and maintain the asset restraint.

Respectfully submitted,

Dated:  July 22, 2026

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile
Attorneys for Plaintiff

12